Eric P. O'Connor (AZ SBN 032316)
**O'CONNOR & HURT, PLLC**
P.O. Box 15087
Phoenix, AZ 85060
Telephone: (602) 910-5223
Email: eric@oconnorhurt.com

*Attorneys for Plaintiffs,*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tierra Parsons, Montriece Baker Murray, Jhamal Brown, Tyrone Washington, Craig Rinaldi, and Dave Mencl on behalf of their minor children, FP, KM, JB, TW, RR, and WM,<br><br>Plaintiff,<br><br>v.<br><br>Scottsdale Unified School District,<br><br>Defendant. | Case No.<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1. **RETALIATION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000d)**<br><br>2. **VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)**<br><br>3. **DEFAMATION**<br><br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

## INTRODUCTION

This action is brought by the Plaintiffs, who are the parent representatives of similarly situated former students of Saguaro High School ("Students"), who seek redress for the retaliatory and discriminatory actions taken against them by the Scottsdale Unified School District ("SUSD"), and its agents and employees, Nathan Slater, SUSD District Athletic Director, Saguaro Athletic Director, Matt Harris, and Saguaro Principal, Anne Achtzeiger after Plaintiffs reported racial

discrimination and requested swift and sufficient remedial actions be taken by SUSD. As a result of the inaction, the Plaintiffs transferred to other schools to escape the hostile educational environment caused by the Defendant. Plaintiffs seek injunctive relief to prevent the Defendant' retaliatory conduct as it relates to the Students' eligibility proceedings with the Arizona Interscholastic Association ("AIA"), declaratory relief to establish that the Defendant' actions violated the Plaintiffs' rights under federal civil rights laws, and compensatory and punitive damages for the harm suffered as a result of the Defendant' unlawful actions.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because it arises under the laws of the United States, including Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), and 42 U.S.C. § 1983.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred within this district, and the Defendant are residents of this district.

**PARTIES**

8. The Plaintiffs are parents of minor aged Students who are former students at Saguaro High School ("Saguaro") and are now enrolled at various schools outside the Scottsdale Unified School District.

9. Defendant Scottsdale Unified School District is a public school district organized under the laws of the State of Arizona and is responsible for the actions of its employees, including Athletic Director of Saguaro High School, Matt Harris; Nathan Slater, District Athletic Director for SUSD; and Anne Achtzeiger, Principal of Saguaro High School.

**AGENCY ALLEGATIONS**

10. Plaintiff is informed and believes, and thereon alleges, that each and every act and/or omission alleged herein were performed by, and/or attributable to, all Defendant, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendant, and that said acts and failures to act were within the course and scope of said

agency, employment, and/or direction and control and are vicariously liable under the theory of *respondeat superior* for the actions and inactions of their employees and contractors.

**FACTUAL ALLEGATIONS**

11. The Plaintiffs were students at Saguaro High School who experienced racial discrimination, including the use of racial slurs, bullying, and harassment, during their time at the school.

12. One of the specific acts of discrimination that was reported by the Plaintiffs centered around an angry and accusatory email sent by the Saguaro Principal, Anne Achtzeiger, which contained multiple references to the racial slur "n**ger" (*the email was not censored*).

13. The angry email was directed at members of the football program for listening to rap music in the school weight room.

14. The email was widely viewed as discriminatory, offensive, and inappropriate, particularly coming from the school's principal.

15. The discriminatory email was circulated throughout the community and created an immediate and divisive environment throughout Saguaro.

16. Plaintiffs denounced the email on social media.

17. Following the wide dissemination of the discriminatory email, the Plaintiffs' formed a group to advocate for appropriate remedial actions by the school. The parent group demanded swift and sufficient remedial actions, including the termination or suspension of the principal who authored the email, as well as broader measures to address the hostile environment created by the incident as well as other incidents withing the school of hazing, bullying, and sexual assault. The group met regularly, and their leader would report back to the members on the administration's responses and any progress made in their advocacy efforts with administration and the district.

18. The parent group was told by SUSD Athletic Director, Matt Harris that no actions would be taken against the principal.

19. Matt Harris and the administration cancelled a planned meeting between the parent group and the school administration to discuss remedial actions.

20. After the email was sent, many of the non-white coaches were deeply offended by Achtzeiger's casual and disrespectful use of the racial slur "n**ger" and advocated vigorously for corrective action.

21. These coaches, along with Plaintiffs, sought meetings with the district and pushed for disciplinary measures, but their efforts were met with inaction.

22. This parent meeting was blown off and never rescheduled and further cemented to the Parent Group that no action would be taken.

23. Instead of meeting with the parents, the principal chose to meet only with "students and coaches" during a practice and delivered an un-moving, in-person apology that most students described as "disingenuous". As it was not football season, most players were not even present.

24. The principal addressed the parents only once, in a deflecting email, which stated in pertinent part, "Recently, one of our classes on campus was disrupted and forced to relocate due to inappropriate music interrupting their students' presentations that were being video recorded. In response, I sent an email to our on campus football coaches, detailing specific vulgar and racist words that were overheard. I should have described them as inappropriate without spelling them out, and for that insensitivity, I sincerely apologize."

25. Immediately after the Principal's meeting with the students and coaches the head football coach sent an email to parents doubling down on the principal's mandate, stating, "The use of inappropriate bad language needs to be cleaned up. If it continues, I will be communicating with parents about their child's use of words while on campus in a high school setting."

26. Rather than address the conduct of the principal or acknowledge to the parents and students that this shouldn't have been thought or said, or confirm to the students that their voices were heard, there were instead immediate calls for further punishment of the STUDENTS, and not the administrator.

27. The parents and students requested remedial action be taken to address the insensitivity and discriminatory climate that was initiated with the email and subsequent enforcement of the "n-word" rule.

28. Some remedial action requested by the parents included: culture and race sensitivity training for the principal, administrative staff, and coaches; culture person based on campus to liaison between administration and the over 50% minority football team and their family members; a public apology by the principal or district; and improvement of the racial climate created in the school.

29. None of the remedial action was taken by the school, and as a result, a complete deterioration of the learning and safety of all students was compromised, and could not be revived, absent extreme remedial measure taken by the school. As a result of the inaction, coaches resigned, and students left to enroll at institutions that better aligned with their values. Some students left immediately following the email, and other students waited for an investigation and corrective action to be taken by the school, before un-enrolling and transferring to other schools. When it was clear that adequate corrective action would not be taken, and when it was practical for students to transfer without harm to their academic standing, the rest of the students transferred.

30. Upon information and belief, Matt Harris advised students that, "they can leave [transfer] if they want to, but WE WILL FIGHT THEM."

31. Upon information and belief, a text message was sent by Matt Harris to one of the students and stated, "If they want to leave, we will fight them."

32. Harris was referring to contesting the athletic eligibility of these transferred players at their new schools.

33. Saguaro and the new schools are all members of the Arizona Interscholastic Association, which is the governing body of high school sports in Arizona ("AIA").

34. The AIA has a bylaw referred to as the "Transfer Rule" which mandates that students transferring from one school to another are ineligible to play in first 50% of the games at the new school UNLESS the student is approved for a hardship, either by fast track recommendation between the two schools or after hearing before the AIA hardship committee.

35. A hardship is defined as an unforeseeable, unavoidable, and uncorrectable act, condition, or event, over which the student and his/her family has no control; and Which has caused a severe burden upon the student or his/her family; and Which has caused the student's

noncompliance with the eligibility rule(s) involved. Whether athletics plays a role in the circumstances involved in the hardship request. *Where it is determined that athletic motivation is present; this would be sufficient, in and of itself, for denial of the hardship request.*

36. As a matter of course, upon the students' transfer to different schools, they, along with the old school and the new school, are each required to complete a hardship form to explain why they are requesting eligibility exceptions. Both the old school and the new school are required to truthfully fill out these forms. The principal, athletic director, and football coaches sign/certify the statements and return the forms to the AIA.

37. After enduring these discriminatory acts and the school's failure to take adequate remedial action, the Plaintiffs and their families were forced and compelled to transfer to other schools, both within and outside the district, to escape the hostile and uncorrected educational environment.

38. Each of the Students' new schools administration thoroughly reviewed the claims of the Students, and certified that they, as members of the AIA, agreed that a hardship was warranted.

39. For students who transferred to schools within the Scottsdale Unified School District, Nathan Slater, the District Athletic Director, summarily denied them the opportunity to even submit hardship requests to the AIA, citing his personal belief that a hardship was not warranted. These decisions were made solely at his discretion and represent a clear conflict of interest given his position on the AIA Executive Board and the sensitivity of the hardship issues presented.

40. Upon information and belief, Defendant negotiated a behind-the-scenes deal with the AIA that allowed certain students who had damning information about SUSD to be approved for hardship transfers while ensuring that others, like the Plaintiffs, would be denied. This selective approval process was part of a broader strategy to retaliate against students who challenged the discriminatory practices at Saguaro High School.

41. Upon information and belief, 7 student transfers were approved for hardships citing the same exact circumstance as Plaintiffs, however rather than require the AIA to evaluate their hardships, SUSD signed off on what is known as a "fast-track transfer."

42. A fast track is a mechanism that allows the student's old school and new school to conduct their own independent investigation and determine whether they recommend that a hardship is warranted. If both schools agree, they sign a "fast track" form and send it to the AIA for approval. The AIA evaluates the fast track form and if the AIA agrees (which it usually does), the student is immediately eligible for competition at his/her new school.

43. Upon information and belief, Nathan Slater used his influence as a long-standing member of the AIA Executive Board to effectuate the approval of these fast track hardships, and the broader deal to ensure that the Plaintiffs' hardship requests would be denied, regardless of their merits. This misuse of his position exemplifies the retaliatory intent and actions taken by Slater and the other Defendant against the Plaintiffs.

44. Saguaro High School, under the direction of its Principal, Athletic Director and the School District's Athletic Director, filled out each of the Plaintiff's hardship forms with the exact same false information.

45. Without providing any details or evidence to support its allegations, the hardship form made blanket allegations that the transfer was "athletically motivated."

46. An "Athletic Motivation" allegation created an unfair presumption that the students' transfers were athletically motivated, which pursuant to AIA bylaws is *sufficient by itself to deny a hardship"*.

47. During a sham AIA hardship hearing on August 13, 2024, where Plaintiffs were invited to "argue their case", Plaintiffs presented substantial written and oral evidence to prove the hardship, and to disprove any athletic motivation allegations. At the hearing there was no evidence presented by Saguaro or the AIA regarding purported athletic motivation, and Matt Harris, who was present and sworn, did not say one word, testify or provide any evidence beyond the written allegation in the hardship form that simply stated "athletic motivation".

48. Despite the lack of evidence of athletic motivation presented at the hearing, and the substantial evidence to justify the hardship, each of the Plaintiffs' hardships *still* were denied, without a written explanation of the denial.

49. This denial effectively penalized the students by making them ineligible to participate in the first 50% of the games at their new schools, as other students in their same position were not given this penalty, despite transferring for the same reasons. In fact, others with the same circumstances were given the immediate opportunity to play via fast track transfers.

50. The hardship forms submitted by Defendant contained false and defamatory statements that were intended to prevent the Plaintiffs from participating in athletics at their new schools.

51. The denial of the Plaintiffs' hardship requests because of the false and baseless statements made by Defendant has caused significant harm, including the loss of athletic opportunities, scholarships, and damage to the Plaintiffs' reputations.

52. The Defendant' actions constitute retaliation in violation of Title VI of the Civil Rights Act of 1964, defamation, intentional infliction of emotional distress, and violations of the Plaintiffs' due process rights under the Fourteenth Amendment of the United States Constitution.

**CLAIMS FOR RELIEF**

**FIRST CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. § 2000d)**
(Against All Defendant)

53. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

54. The Plaintiffs engaged in protected activity by reporting racial discrimination and transferring to other schools to escape a hostile educational environment.

55. The Plaintiffs' parents were also part of a parent group that advocated for remedial actions in response to the discriminatory email, including the termination or suspension of the principal and other corrective measures.

56. The Defendant retaliated against the Plaintiffs by submitting false and defamatory hardship forms to the AIA, by denying students within the district the opportunity to submit hardship requests, and by engaging in ex-parte communications to influence the AIA's decision-making process.

57. Upon information and belief, Nathan Slater, the SUSD District Athletic Director, negotiated a behind-the-scenes deal with the AIA that would allow certain students to be approved for hardship transfers while ensuring that the Plaintiffs' requests would be denied.

58. Further, upon information and belief, Nathan Slater used his influence as a member of the AIA Executive Board to effectuate this deal, ensuring the denial of the Plaintiffs' hardship requests in retaliation for their advocacy and opposition to the discriminatory practices at Saguaro High School.

59. The text message from Matt Harris stating, "If they want to leave, we will fight them," further illustrates the retaliatory motive behind the Defendant' actions.

60. The Defendant' retaliatory actions were taken with the intent to punish the Plaintiffs for asserting their rights under federal civil rights laws and caused significant harm to the Plaintiffs.

61. As a direct and proximate result of the Defendant' actions, the Plaintiffs have suffered emotional distress, loss of educational and athletic opportunities, reputational harm, and other damages.

## SECOND CAUSE OF ACTION
**VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT**
**(42 U.S.C. § 1983)**
(Against All Defendant)

62. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

63. The Defendant, acting under color of state law, deprived the Plaintiffs of their right to due process by submitting false allegations to the AIA, engaging in ex-parte communications, and influencing the AIA's decision-making process in a manner that was not disclosed to the Plaintiffs or their families.

64. Nathan Slater's decision to unilaterally deny certain students the opportunity to submit hardship requests, while simultaneously negotiating with the AIA regarding the outcomes of other students' requests, represents a blatant conflict of interest and a violation of due process.

65. The Defendant' actions deprived the Plaintiffs of a fair and impartial hearing, resulting in the denial of their eligibility to participate in athletics without due process of law.

66. As a direct and proximate result of the Defendant' actions, the Plaintiffs have suffered damages, including but not limited to emotional distress, loss of educational and athletic opportunities, and reputational harm.

**THIRD CAUSE OF ACTION**
**DEFAMATION**
(Against All Defendant)

67. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

68. Defendant made false and defamatory statements about the Plaintiffs in the hardship forms submitted to the AIA, alleging that the Plaintiffs transferred for athletic reasons.

69. These statements were made with knowledge of their falsity or with reckless disregard for the truth and were intended to harm the Plaintiffs' reputations and prevent them from participating in athletics at their new schools.

70. The text message from Matt Harris further confirms the intent to harm the Plaintiffs through false and defamatory statements.

71. As a result of the defamatory statements, the Plaintiffs have been penalized, suffered reputational harm, emotional distress, and loss of opportunities.

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

72. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 70 as if fully set forth herein.

73. The Defendant engaged in extreme and outrageous conduct by retaliating against the Plaintiffs for asserting their civil rights, submitting false and defamatory hardship forms, denying the opportunity to submit hardship requests to students within the district, and ensuring that the AIA would deny the Plaintiffs' hardship requests.

74. The text message from Matt Harris reflects a clear intent to cause harm to the Plaintiffs by fighting their transfer requests.

75. The Defendant' actions were intended to cause, or were taken with reckless disregard of the probability of causing, severe emotional distress to the Plaintiffs.

76. As a direct and proximate result of the Defendant' actions, the Plaintiffs have suffered severe emotional distress, including anxiety, depression, and other psychological harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

a) A declaratory judgment that the Defendant' actions violated the Plaintiffs' rights under federal civil rights laws, including Title VI of the Civil Rights Act of 1964, and the Due Process Clause of the Fourteenth Amendment.

b) A preliminary and permanent injunction prohibiting any involvement by Defendant in Students eligibility proceedings with the Arizona Interscholastic Association ("AIA").

c) A preliminary and permanent injunction prohibiting Defendant from making false and defamatory statements on Students' hardship forms or in Students' hardship proceedings.

d) A preliminary and permanent injunction prohibiting Defendant from engaging in retaliatory conduct against the Plaintiffs or other students.

e) An order requiring the AIA to rescind its denial of the Plaintiffs' hardship requests and to conduct a new, fair, and impartial hearing.

f) Compensatory damages in an amount to be determined at trial, including but not limited to damages for emotional distress, loss of educational and athletic opportunities, NIL opportunities, and reputational harm.

g) Punitive damages against the individual Defendant for their willful, malicious, and reckless disregard of the Plaintiffs' rights.

h)  Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

i)  Any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all issues triable of right by jury.


Dated: August 22, 2024

**O'CONNOR & HURT, PLLC**

By: /s/ Eric P. O'Connor, Esq.
    Eric P. O'Connor, Esq
    Attorneys for Plaintiffs

## **VERIFICATION**

I, Tierra Parsons, verify that I have read the allegations contained in this Verified Complaint; that, other than allegations made upon information and belief, those allegations are true and correct to the best of my knowledge and belief which, in some instances, is based on information that was provided to me from others.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 22nd DAY OF AUGUST 2024

By: /s/ Tierra Parsons
Tierra Parsons